DMP:JPM
F#. 2017R01745

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PERSON KNOWN AND
DESCRIBED AS BOBBY JONES,
DATE OF BIRTH JANUARY 2,
1965

- - - - - - - - - - - - - - - - - -X

18 M 146

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR A
SEARCH WARRANT

(Fed. R. Crim. P. 41)

EASTERN DISTRICT OF NEW YORK, SS:

STEVEN KAPLAN, being duly sworn, deposes and states that he is a Special Agent with the United States Attorney's Office ("USAO"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 922(g) and 924(c) – specifically, that on or about September 23, 2017, BOBBY JONES, date of birth January 2, 1965, illegally possessed a firearm and possessed a firearm in furtherance of a drug-trafficking offense, in Brooklyn, New York – will be obtained by taking, and preserving as evidence, a buccal swab sample or blood sample of BOBBY JONES.[1]

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68 (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

The source for your deponent's information and the grounds for his belief are as follows:[2]

## I. Background

1. I have been a special agent with the USAO for approximately nine years and have investigated numerous types of criminal activity including organized crime, firearms offenses, and controlled substances violations under federal law. Prior to my work at the USAO, I was employed by the New York City Police Department ("NYPD") for 24 years, including 21 years as a Detective. The facts set forth in this affidavit come from my review of records from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), New York City Police Department ("NYPD"), and other government agencies, and video footage recorded by surveillance cameras, reports of interviews, and conversations with other law enforcement officers.

2. I have been involved in an investigation of BOBBY JONES in connection with the aforementioned criminal activity.

3. On or about September 23, 2017, at approximately 1:30 a.m., NYPD officers in the 70th Precinct received a radio run, following a 911 call, that indicated that a black male, dressed in jeans and a white and red shirt, had displayed a firearm at a laundromat at 341 Ocean Avenue, Brooklyn, New York. The caller stated on the 911 call that the individual was "drunk" and "acting crazy." The caller did not leave a name and

---

[2]   Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, all of the facts and circumstances relevant to this investigation are not set forth in this affidavit.

number, but did answer a callback to confirm the information and stated that the caller had seen a firearm.

4. Multiple NYPD cars responded to 341 Ocean Avenue, the site of the Oasis Laundromat. Officer #1 and Officer #2 arrived at the scene to see other police cars outside the laundromat but no officers. When they arrived, Officer #1 (who would become the arresting officer) and Officer #2 observed a man, later identified as BOBBY JONES. The individual exiting the laundromat matched the description of the suspect in the radio run. Not wanting to alert JONES, Officer #2 began to follow him south on Ocean Avenue. Officer #2 observed JONES stumbling and with an unsteady gait. Officer #2 then observed JONES looking over his shoulder, at which point in time JONES began to run. Both officers began to chase JONES.

5. Officer #1 followed BOBBY JONES onto to East 21st street, several blocks from the laundromat. On East 21st Street, Officer #1, who was running in the street, observed JONES, who was running on the sidewalk, holding a silver firearm in his right hand at waist-level. Officer #1 then observed JONES move his hand down with the firearm toward a pile of garbage bags, and again take off running. Officer #1 then caught up to JONES further down the block and placed him under arrest.

6. Officer #2 was following both Officer #1 and BOBBY JONES onto East 21st Street. As Officer #2 was chasing JONES, Officer #2 observed the suspect on the sidewalk and saw him veer in a garbage pile and a firearm fall from JONES' waist area. Seeing Officer #1 had stopped and detained JONES further up the street, Officer #2 waited with the firearm.

7. Following the chase, other NYPD officers began to arrive at the scene on East 21st Street. Officer #1 secured the weapon in a brown paper bag, and BOBBY JONES was arrested and transported to the precinct.

8. After arriving at the precinct, the NYPD officers transporting BOBBY JONES saw that JONES was holding small plastic baggies in his hands (which were handcuffed) that contained a white rock-like substance that appeared to be cocaine. There were also small bags on the seat as well as the floor of the police vehicle.

9. After the officers removed BOBBY JONES from the car and brought him to the station, the officers called an ambulance because they were concerned that JONES had ingested cocaine from the white baggies. The officers returned to the police car that they used to transport JONES and, after searching the car, found additional small bags containing what appeared to be cocaine. They found bags stuffed between the cushions of the back-seat of the car where the defendant was seated. Subsequent testing confirmed the substance in the baggies to be cocaine.

10. Officer #1 processed the firearm that was recovered as evidence and determined it to be a Taurus 357 magnum, chrome/stainless steel in color, serial no. VL63824. Based on discussions with an interstate nexus expert from the ATF, I know that the Taurus magnum .357 revolver was manufactured outside of the State of New York.

11. An NYPD Evidence Collection Team responded to the precinct, took custody of the firearm recovered from JONES, and swabbed it for DNA. The Office of the Chief Medical Examiner ("OCME") has confirmed that DNA samples with "sufficient concentration of DNA" were detected on the swabs taken of the firearm. The OCME has identified three "contributors" to swabs of the "front strap, back strap, [and]

4

side grips" of the firearm. The OCME has advised that the DNA on the firearm is suitable for comparison to known DNA samples if they are provided to the OCME.

12. I have also reviewed BOBBY JONES' criminal history records and have determined that, on or about June 6, 2007 in Kings County Supreme Court, the defendant was convicted of criminal sale of a controlled substance in the third degree in violation of New York Penal Law 220.39, a felony punishable by a term of imprisonment of more than one year. The certificate of conviction shows that the JONES' birthdate is January 2, 1965, as do other law enforcement records that I have reviewed.

13. On the basis of the above, as well as other information obtained as part of this investigation, BOBBY JONES was indicted by a grand jury in Brooklyn on October 26, 2017, Criminal Docket No. 17-593 (LDH). JONES is charged with possessing a firearm as a previously convicted felon, in violation of Title 18, United States Code, Section 922(g), possessing cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and unlawful use of a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A). JONES is presently detained at the Metropolitan Detention Center in Brooklyn, New York.

## II. DNA Evidence

14. I know from my training and experience and participation in this investigation, as well as my conversations with other law enforcement officials, that DNA was recovered from the firearm that, there is probable cause to believe, BOBBY JONES possessed on or about September 23, 2017, and which he placed or dropped onto a garbage pile while running from NYPD officers. The weapon, which was observed in his

5

hand and at his waist area, made contact with JONES' skin from which DNA and fluids could be transferred.

15.     The DNA evidence collected by law enforcement has been tested by the OCME and confirmed to contain a concentration of DNA suitable for comparison to known DNA samples. Based on the facts set forth above, and information obtained during the course of the investigation, there is probable cause to believe that the DNA of BOBBY JONES will be one of the contributors identified in the OCME's testing.

16.     OCME has advised the government that it requires a DNA sample obtained directly from BOBBY JONES (e.g., a buccal swab) in order to obtain the DNA necessary to perform a complete analysis of whether BOBBY JONES was a contributor to any DNA material found on the firearm that was recovered at the crime scene.

17.     Based on the above information, there is probable cause to believe that BOBBY JONES is a contributor to DNA evidence found on the gun recovered at the crime scene. Therefore, there is probable cause to believe that a buccal swab or sample of his blood would constitute evidence of JONES' commission of firearms offenses.

WHEREFORE, your deponent requests that a search warrant be issued authorizing ATF Special Agents, NYPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from BOBBY JONES a buccal swab sample or sample of blood. An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek and inside left cheek, for approximately five to ten seconds. Two samples are requested in the event that

one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis. A blood sample will only be sought in the event that BOBBY JONES refuses to submit to a buccal cheek swab. In the event that a blood sample is taken, a licensed doctor or nurse or other qualified medical practitioner will take the sample.

*S.A. Steven Kaplan*
STEVEN KAPLAN
Special Agent
United States Attorney's Office
Eastern District of New York

Sworn to before me this
\_16\_ th day of February, 2018

s/Bloom

THE HONORA
UNITED STAT
EASTERN DIS

7